**WISCONSIN–TEXAS OIL CO. et al. v. CLUTTER.** (No. 629–4145.)

(Commission of Appeals of Texas, Section A. Feb. 25, 1925.)

**1. Mines and minerals ☞77—Temporary cessation of developments under oil lease not an abandonment.**

Temporary cessation of developments or operation under an oil and gas lease does not, as matter of law, constitute an abandonment.

**2. Trial ☞215—Defendants held entitled to charge that temporary cessation of developments under oil lease was not abandonment.**

In suit to cancel oil and gas lease, defendants *held* entitled, in connection with special issue as to abandonment, to charge that temporary cessation of developments under lease was not as matter of law an abandonment, where court's instructions and evidence may have led jury to believe the contrary.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Joe Clutter against the Wisconsin-Texas Oil Company and others. Judgment for plaintiff was affirmed by Court of Civil Appeals (258 S. W. 265), and defendants bring error. Reversed and remanded.

Mason Williams, King & Roark, and Kennon & Kennon, all of San Antonio, and Willet M. Spooner and Leo Mann, both of Milwaukee, Wis., for plaintiffs in error.

Terrell, Davis, Huff & McMillan, of San Antonio, for defendant in error.

CHAPMAN, J. Joe Clutter, hereinafter referred to as plaintiff, brought suit in one of the district courts of Bexar county, against the Wisconsin-Texas Oil Company, and the Wisconsin-Texas Gas Company and others, hereinafter referred to as defendants, to cancel an oil and gas lease on certain lands in Bexar county. Operations were begun under the terms of the lease, and two gas wells were drilled in which gas was found in paying quantities. The lease contained no specific forfeiture clause. The case was submitted to the jury upon one special issue, which was as follows:

"Did George B. Mechem, or his assigns the Wisconsin-Texas Oil Company, and the Wisconsin-Texas Gas Company, prior to January 14, 1920, abandon the oil and gas lease in controversy? Answer yes or no."

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In connection with this special issue the court gave this instruction:

"You are instructed, in connection with question No. 1, that abandonment is a question of intention, and the duty rests upon you in answering this question to ascertain what the intention of the defendants was in this case up to the time of the filing of this suit, to wit, January 14, 1920. The intention to abandon may be shown by all the facts and circumstances in the case. The intention not to abandon may likewise be determined by all the facts and circumstances in the case. The burden of proof is upon the plaintiff to establish the affirmative of question No. 1 by a preponderance of all the evidence."

The defendants asked the following special instruction, which was refused:

"In connection with the issue of abandonment submitted, you are instructed that a temporary cessation of development or operations would not, as a matter of law, constitute an abandonment within the meaning of that word as submitted, but that you are authorized to consider such cessation, if any, in this cause, only as it may bear, if it does, upon the question of the intention, if any, of Mechem or his assigns, prior to the institution of this suit, to relinquish his or their rights under the contract in the leased premises."

The jury answered the special issue in favor of the plaintiff, and judgment was rendered in his favor, which judgment was affirmed by the Court of Civil Appeals. 258 S. W. 265.

The plaintiff alleged as one of his grounds to show abandonment that the defendants had abandoned all operations on the leased premises, and this allegation was specifically denied by the pleadings of the defendants, and much of the evidence was with reference to this issue.

In the case of Hines, Director General, v. Hodges, 238 S. W. 349 (writ of error refused), being a suit to recover damages for personal injury received at a public railroad crossing, one of the allegations of negligence on the part of the defendant was that the defendant had placed no watchman at the crossing. The court submitted to the jury the following special issue:

"Were the defendant's agents and servants guilty of negligence in the operation of the train or the condition of the crossing where the accident occurred?"

In connection with this special issue, the court charged the jury that it was the duty of the defendant and its agents, etc., in charge of the train, to exercise ordinary care to prevent any accident, and in connection therewith, gave a proper definition of ordinary care, and told the jury that if defendant failed to exercise such ordinary care, in either or any of the particulars charged in plaintiff's petition, then to answer special issue number 1 in the affirmative. The defendant asked this special instruction which was refused:

"You are charged that it was not the duty of the defendant to keep a watchman at the crossing in question unless such crossing was peculiarly or extraordinarily dangerous, and, unless you so find, you will not find the defendant guilty of negligence in this respect."

The court held that this requested instruction should have been given and discussed the matter in these words:

"We are of the opinion that the defendant was, under the circumstances, entitled to have this charge submitted to the jury. A distinct ground of negligence upon which plaintiff relied for recovery was a failure of the defendant to keep a watchman at the crossing in question, and, by a reading of special issue No. 1 in connection with the fifth paragraph of the court's charge, it may be seen that the jury were given the opportunity at least to consider and to affirm negligence on the part of the railroad company because of the failure to keep a watchman at the crossing. The evidence shows without dispute that no watchman in fact had been placed at this crossing, and it therefore became important to the defendant that the jury receive a proper instruction, embodying the law relating to the subject."

[1] We think the question under consideration in the instant case is very similar to the one that was passed on in the case above mentioned. The law is well settled that a temporary cessation of developments or operation under an oil and gas lease does not, as a matter of law, constitute an abandonment. Fisher v. Crescent Oil Co. (Tex. Civ. App.) 178 S. W. 905; Hall et al. v. McClesky (Tex. Civ. App.) 228 S. W. 1004; Marnett Oil & Gas Co. v. Munsey et al. (Tex. Civ. App.) 232 S. W. 867; Jacobs v. Robinson et al. (Tex. Civ. App.) 241 S. W. 241; Munsey et al. v. Marnet Oil & Gas Co., 113 Tex. 212, 254 S. W. 311.

[2] The special charge submitted by the court and the special instruction given by him in connection therewith, taken in connection with the fact that much evidence was given on the trial as to whether defendants had ceased operation on the leased premises, might have led the jury to believe that a cessation or abandonment of operations would constitute "abandonment" on the part of defendants as that term is used in the special issue, and the special instruction, and under these circumstances we think that the defendants were entitled to have the jury charged that a temporary cessation of development or operation would not necessarily constitute an abandonment within the meaning of that word as submitted by the court, and that the special instruction asked by defendants should have been given. We recommend that the judgments of the trial court and the Court of Civil Appeals be reversed, and that the cause be remanded to the district court.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.