### APPEAL OF A. L. HUEY.

Docket No. 6132.    Decided July 24, 1926.

Amounts invested in oil leases in "wildcat" territory, which became worthless during the taxable year as the result of the sinking of dry wells, are deductible as losses from gross income.

*Robert Ash., Esq.,* for the petitioner.
*John W. Fisher, Esq.,* for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This is a proceeding for the redetermination of a deficiency in income tax for the year 1920 in the amount of $1,054.40. The taxpayer alleges error on the part of the Commissioner in refusing to allow the deduction from gross income of alleged losses on leases in Clay County, Tex., and Tillman County, Okla., which were determined to be worthless in 1920.

#### FINDINGS OF FACT.

In 1920 the taxpayer and A. R. Cotton were partners in the oil business. On January 22, 1920, the partnership through Huey, but without Cotton's knowledge, bought a lease to a 10-acre tract in Tillman County from one James R. Robinson, the consideration therefor being $6,000. The taxpayer had a one-half interest in the lease. The lease was in wildcat territory. Huey got an assignment of the lease but never had it recorded. At the time of the purchase a well was being drilled about 1½ miles from the 10-acre tract. This well came in dry within 48 hours after the lease had been purchased.

Other wells were drilled within the vicinity of the lease during the early part of 1920. They were all completed dry holes by the middle of 1920. In the summer of 1920 a well was being drilled to the east of the tract embraced in the lease. The proposition was made to the taxpayer that if he would go in with the driller they would drill the well to a depth of 2,500 feet, which was deeper than any other well in that vicinity. The taxpayer refused to put any more money into prospecting in the immediate neighborhood. He told the person trying to interest him that rather than put up any more money he would turn his lease over to him, as he considered it worthless; that he had no confidence in that territory; and he then and there delivered the lease, but without endorsement, to the prospector. To the date of the hearing no productive oil well has ever been drilled in Tillman County.

On February 4, 1920, the taxpayer acquired an interest in a 700-acre oil and gas lease in Clay County, Tex., the consideration for the taxpayer's interest being $3,000 cash. Shortly thereafter the taxpayer acquired an interest in a 200-acre lease adjoining holdings he then held for $2,040 cash. These leases were in wildcat territory. They were acquired from one Rube Scott, who was at the time drilling an offset well. The well was completed dry in June, 1920. Other dry wells were drilled within from one to five miles of the property during the year 1920. During said year Scott paid certain rentals upon the lease making them good until after the close of the year 1920. Scott charged the taxpayer for a portion of the rental and the taxpayer paid the amount charged against him, although at the time he considered the leases worthless.

In his income tax return for 1920 the taxpayer claimed a deduction from gross income of $8,040 as losses sustained during that year, representing his investment in the three leases above described. The Commissioner has disallowed this deduction and such disallowance is the basis of this appeal.

OPINION.

SMITH: The Revenue Act of 1918 permits a taxpayer to deduct from gross income in an individual tax return "losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business." Section 214(a)(4). The taxpayer claims the right to deduct from gross income certain investments in oil leases in wildcat territory, upon the ground that the leases became worthless during the year 1920, such worthlessness being proven by the fact of wells being drilled during the year coming in "dry."

The Commissioner has disallowed the deduction upon the ground that the evidence shows that the leases ran beyond the year 1920; that for some years the leases ran from three to five years and that

there is no evidence that the leases upon which the taxpayer claims the deduction of losses for the year 1920 had terminated or been canceled during the year 1920. The Commissioner furthermore contends that the wells which were drilled were at least a half-mile away from the Tillman County lease and that in some instances a dry well a half-mile from a leased tract does not prove that a well driven upon the tract might not be productive; that the fact that the wells came in dry was no indication that there was no oil in the tract covered by the lease; furthermore, that the leases had not been canceled by December 31, 1920, and that the Tillman County lease was given away by the taxpayer in 1920 and that no loss can be claimed in respect of a gift.

Taking up first the Tillman County lease, it is to be noted that Cotton had information at the time Huey purchased the lease that the Sheegog well, which was being driven at the time, had reached water sand and not oil-bearing sand. As soon as he learned of the investment made by Huey in the lease, he advised him that the lease was worthless, and within 48 hours after the purchase both parties came to the conclusion that it was worthless. On the ground that it was worthless, Huey delivered it to an individual who wished to drive a well in another locality not far distant from the leased tract. The Commissioner takes the position that no loss can be predicated upon this lease for the reason that it was given away. We are of the opinion, however, that the taxpayer did not intend to and did not give away a thing of value. In our opinion the lease was proven to be worthless at the time that the taxpayer delivered it to the driller of the well to the east. We can not doubt that the lease had been proven to be worthless at that time. The investment by the taxpayer in the lease was undoubtedly a loss sustained during the year 1920.

With respect to the taxpayer's investment in the two leases in Clay County, Tex., it is to be noted that they continued as valid and subsisting leases at December 31, 1920. These leases were upon a tract of land containing approximately 900 acres. One well had been driven upon the property within from 1 to 5 miles of the property. Scott, however, appears to have had some hope during the year 1920 that oil and gas would be found upon the leased premises and that the leases might become valuable. At any rate, he saw fit to pay minimum royalties upon the land and to charge the taxpayer with his pro rata share of those royalties. In view of this fact we are not satisfied that the taxpayer sustained a loss deductible from gross income in respect of the leases during the year 1920.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*