A. H. Fell, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 2089.    Promulgated June 9, 1927.

1. The petitioner acquired a one-fourth interest in an oil lease. Oil was not found in paying quantities, and the petitioner and his associates, within the taxable year, withdrew from the premises, removed all of their tools and equipment therefrom, and did not again enter upon the land or assert any rights therein. *Held,* the oil lease rights were abandoned in the taxable year.

2. The tools and equipment were sold and delivery made within the year, although the price to be paid was not arrived at and

108346°—28——20

payment not made until subsequently. *Held,* the enterprise was wound up within the taxable year, and petitioner is entitled to a deductible loss of the amount contributed by him less his share of the salvage.

*John B. King, Esq.,* and *Don T. Haynes, C. P. A.,* for the petitioner.

*Robert A. Littleton, Esq.,* for the respondent.

This is a proceeding to redetermine deficiencies in income tax for the years 1919 to 1921, inclusive, in the amount of $2,396.88. The amount in controversy is $2,216.43, for the year 1919. The question is whether the petitioner sustained a deductible loss in that year.

### FINDINGS OF FACT.

The petitioner resides in Wichita Falls, Tex.

In April, 1919, one Harry Katz acquired by assignment an interest in an oil and gas lease, covering 10 acres of land in Wichita County, located in Block 89 of the Red River Valley Lands Subdivision, paying therefor $18,000. The lease was for a term of three years from September 12, 1917, and thereafter so long as oil and gas was found in paying quantities. It provided among other things for a royalty of one-eighth of all oil produced; that the lessee should begin operations within one year, or thereafter pay an annual rental in quarterly installments until operations were commenced; that the lessee had the right to surrender the grant at any time upon payment of $1 and any amounts then due thereunder and to be released from all further obligations, and that a written surrender from the lessee accompanied by $1 would be accepted by the lessor. About a month after Katz acquired the lease the petitioner and two other persons became associated with Katz for the purpose of operating under the lease. They agreed to and each did contribute one-fourth of the amount paid for the lease and also one-fourth of the cost of sinking a well on the 10-acre tract. They further agreed to form a joint stock association with capital stock of $100,000 and to transfer the lease and the completed well to the association for its entire authorized capital stock, which was to be issued to the four of them in equal amounts.

They drilled to the 2,000-foot level and struck no oil, except that at the level of 1,730 feet they passed through a stratum of oil sand. The organization of the joint stock association had not been completed and the plan to do so was thereupon given up. No property was ever conveyed to it and it had no assets. The four associates then purchased the necessary tools and equipment, plugged the hole back to the 1,730-foot level and attempted to develop oil in paying quanti-

ties at that level. This effort was a failure. Thereupon in August, 1919, the petitioner and his associates decided to abandon the project, withdrew from the leased premises, removed therefrom all of their tools, equipment and other property, never again entered upon it, and never paid any further rentals or claimed any rights therein.

The salvaged property consisting of casing, cables, tools, tubing, pumps, etc., was sold in 1919 to Golconda No. 2 Oil Co. This company was unable to make present payment therefor. The value of the salvage material was subsequently determined to be $3,354.43 and this sum was paid in installments in 1920 and 1921, and petitioner's share thereof was $838.61.

The petitioner contributed during 1919 toward the entire enterprise including his share of the cost of the lease, $19,145. While drilling operations were proceeding, he sold a part of his undivided interest of $4,000, leaving his net contribution $15,145.

OPINION.

Love: The primary question is whether or not there was an abandonment in 1919 by the petitioner and his associates of their interest in the oil lease. If there was an abandonment, was the loss which they sustained in their enterprise realized in 1919, in view of the fact that the amount of salvage was not determined until 1920 and payment therefor not received until 1920 and 1921?

. The estate that a lessee acquires under the laws of Texas to secure the production of oil is determinable by abandonment. Abandonment is defined as the surrender or relinquishment of rights of property by a person, and includes both intention to abandon and the act of abandonment. There must be a concurrence of the intention to abandon and an actual relinquishment of the property. The intention to abandon may be shown by circumstantial evidence.

In the case of *Wisconsin-Texas Oil Co.* v. *Clutter*, decided by the Court of Civil Appeals, Fifth District of Texas (258 S. W. 265), the question in the case was whether or not the Wisconsin-Texas Oil Co. had abandoned an oil lease, and if so, did such abandonment effect a forfeiture of the lease contract to the extent that the owner of the fee might make a valid subsequent lease contract with another. The trial court instructed the jury " that abandonment is a question of intention, and the duty rests with you in answering this question to ascertain what the intention of the defendants was in this case * * *. The intention to abandon may be shown by all the facts and circumstances in the case. The intention not to abandon may likewise be determined by all the facts and circumstances in the case."

The Court of Civil Appeals approved the charge given by the trial court under which the jury found as a fact that the company had

abandoned the lease. In discussing the law, the Court of Civil Appeals states the following propositions:

Abandonment is dependent upon the acts of the party; it is a question of intention to be ascertained and determined by the jury as to what that intention was * * *.

That intention to abandon the lease, or what is equivalent thereto, may be established just as any other fact may be, by positive testimony or by circumstantial evidence, such as removal of the machinery, quitting the premises, ceasing to work, and any other circumstance of value tending to show an intention to ultimately relinquish all rights and interest in the leased premises. * * *

* * * * * * *

The estate that a lessee acquires to secure production of minerals is not in fee nor absolute, because it may be lost, and is determinable by abandonment on the part of the lessee, of mineral development.

While this case was reversed by the Supreme Court of Texas (268 S. W. 921), it was on grounds which do not affect the principle of law stated above.

On general principles and to the same effect are the following Texas cases: *Grubb* v. *McAfee*, 109 Tex. 527; 212 S. W. 464; *Robinson* v. *Jacobs*, 113 Tex. 231; 254 S. W. 309; *Guffey Petroleum Co.* v. *Jeff Chaison Townsite Co.*, 48 Tex. Civ. App. 555; 107 S. W. 609. To the same effect are the following cases: In New York, *Conkling* v. *Krandusky*, 112 N. Y. S. 13; in West Virginia, *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317; 61 S. E. 307. In the last cited case the court said that whether or not a lease has been terminated by abandonment on the part of the lessee is a question of intention. That the abandonment of a lease, and its termination by such abandonment closes the transaction is so nearly axiomatic, that argument in support of such a proposition would be superfluous.

In the *Appeal of A. L. Huey*, 4 B. T. A. 370, while the word abandonment was not used, the petitioner was allowed a loss deduction because of the fact that he had abandoned his lease, such abandonment being evidenced by the fact that he delivered the lease contract to another person without compensation.

To our minds the evidence shows beyond doubt an intention on the part of the petitioner and his associates to abandon their rights under the lease. This is the only reasonable interpretation of their conduct in withdrawing from the premises, removing all of their property therefrom and not again entering upon or making any claim thereto. We think these acts also amount to an actual relinquishment of the lease rights.

It is suggested, however, that in view of the fact that the Supreme Court of Texas has held that oil in place is realty, that an oil lease is a lease of realty, and that mere abandonment may not be treated as a termination, or closing of the deal, in the absence of a sale or other

formal disposition of the leasehold. However, the Supreme Court of Texas has held that an oil lease may be abandoned and that such abandonment may effect a forfeiture even as against a subsequent assertion of rights on the part of the lessee. *Wisconsin Texas Oil Co.* v. *Clutter, Grubb* v. *McAfee, supra.* The idea, or doctrine seems to be that notwithstanding the holding that oil in place is realty, that an oil lease is but a permit or license to remove that oil by the payment to the fee owner of certain royalties, no nonforfeitable interest in the fee is granted by such a lease.

The petitioner claims that when the enterprise was abandoned he sustained in 1919 a loss, which is deductible in that year, of $15,145, or of this amount less the salvage subsequently collected. The Revenue Act of 1918, section 214 (a) (4), (5), allows the deduction of " losses sustained during the taxable year." The Board has held that a loss is not sustained or *realized* until the transaction out of which it arises is completed or closed. *Appeal of A. J. Schwarzler Co.,* 3 B. T. A. 535; *Appeal of Old '76 Distilling Co.,* 3 B. T. A. 1346. The question therefore is whether or not the loss was sustained in 1919. The amount to be paid by the purchaser of the salvaged equipment was not determined in dollars and cents until the following year and payment was not received until subsequently. However, the equipment was delivered in 1919 and the property therein was then transferred to the purchaser. It then became an executed sale and the obligation of the purchaser to pay arose. If no price is agreed upon, the buyer must pay a reasonable price. *Williston on Sales,* 2d ed., sec. 171. The amount was not subject to fluctuations in market price; the time as of which it was to be determined was fixed by the delivery of the goods. These considerations lead to the conclusion that the enterprise was wound up and closed within the taxable year, as all of the factors were then in existence which would enable the amount of loss to be ascertained. The loss sustained by petitioner was $15,145, less his share of the salvage, or $14,306.39.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

STERNHAGEN dissents as to the loss claimed upon the sale of the equipment.