**FLATO et al. v. WEIL et al.** (No. 7965.)

Court of Civil Appeals of Texas. San Antonio.
March 14, 1928.

Rehearing Denied April 4, 1928.

**1. Mines and minerals** &⇒73½—Agreement that lessees had brought in producing well operated to put lease in effect for five years pursuant to its terms.

Where oil and gas lease for period of five years, provided that lease should be in full force and effect on discovery of oil and gas in paying quantities, and payment of certain sum in cash, agreement subsequently entered into after discovery of gas to effect that lessees had brought in a well that was producing gas in paying quantities as contemplated in original agreement, operated to put lease in full force and effect for period of five years from and after its date.

**2. Mines and minerals** &⇒73½—Continuation of oil and gas lease depended on whether one or more minerals was being produced in paying quantities as required.

Under oil and gas lease providing for its continuance for five years and year to year thereafter, so long as premises should yield gas, oil, sulphur, in paying quantities, continuation of lease depended not on number of wells dug

---

&⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by lessees, but on whether one or more minerals was being produced in paying quantities.

**3. Mines and minerals ⚫→73½—Evidence that gas was flowing in paying quantities perpetuated vitality of oil and gas lease.**

Under oil and gas lease providing for continuation after five-year period in case gas, oil, sulphur, or other minerals were being produced in paying quantities, evidence to effect that at end of five-year period, gas was flowing from well on premises in paying quantities, was sufficient to perpetuate vitality of contract.

**4. Mines and minerals ⚫→78(2)—Lessees were entitled to perform proper work to recondition gas well, after five-year period of lease authorizing continuation.**

Where at end of five-year period, under oil and gas lease authorizing continuation in case minerals were being produced in paying quantities, gas was flowing but well thereafter became out of order, lessees were entitled to proceed with proper work on well in order to recondition it.

**5. Mines and minerals ⚫→78(2)—Oil and gas lease will not be forfeited, because lessees on closing gas well merely capped it.**

Oil and gas lease is not subject to forfeiture because of fact, that lessees at time of closing gas well merely capped it on theory, that such was not a sufficient precaution to preserve well where it appeared that well was so well protected, that it took only a few days to recondition it.

**6. Mines and minerals ⚫→78(2)—Lessees making two contracts to sell gas during five year period made sufficient effort to negotiate for development.**

Lessees under oil and gas lease, having during five-year period made at least two contracts to sell gas produced thereon, *held* to have made sufficient effort to negotiate for development of premises so as to avoid forfeiture of lease, in view of fact that lessors made no complaint, and by their conduct led lessees to believe, that all would be agreeable.

**7. Mines and minerals ⚫→77—Temporary cessation of developments or operation does not as matter of law constitute "abandonment" of oil and gas lease.**

A temporary cessation of developments or operation under an oil and gas lease, does not as a matter of law, constitute an abandonment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon—Abandonment.]

**8. Mines and minerals ⚫→78(2)—Lessors not considering lessees have abandoned lease will not be permitted to declare abandonment of oil and gas lease.**

Where lessors evidently did not consider that lessees under oil and gas lease had abandoned lease at end of five-year term, and only took action of forfeiture at the beginning of next year, thereby causing heavy expense to lessees, they will not be permitted to declare an abandonment of contract.

**9. Mines and minerals ⚫→73½—Time consumed by lessors in attempted forfeiture of lease, will be deducted from year added to length of lease under provision for continuation.**

Where lessees after expiration of five-year term, under oil and gas lease authorizing continuation year after year, were compelled by acts of lessors to cease operations shortly after five-year period, they will not be limited as to certain time within which to resume operations, except that time consumed by lessors endeavoring to compel an abandonment, will be deducted from year added to length of lease according to provision for continuation.

Appeal from District Court, Kleberg County; W. B. Hopkins, Judge.

Action by R. G. Flato, for himself and as agent and attorney in fact for A. A. Clark, and as trustee for Robert J. Kleberg, Jr., and others against Alex Weil and another. Judgment for defendants, and plaintiffs appeal. Modified and as modified, affirmed.

E. H. Crenshaw, Jr., of Kingsville, for appellants.

Boone & Savage and F. A. Raymer, all of Corpus Christi, for appellees.

FLY, C. J. R. G. Flato, for himself and as agent and attorney in fact for A. A. Clark, and as trustee for Robert J. Kleberg, Jr., C. A. Roberts, B. S. Roberts, Mrs. J. B. Roberts, Kate Roberts, A. L. East, L. H. Litton, Charles H. Flato and R. E. Welhaum, brought this action, in effect one of trespass, to try title to farm lots 11, 12, 13 and 14, in block or section 40 of the Kleberg Town & Improvement Company's subdivision, containing 160 acres of land, against Alex Weil and Moise Weil. All the parties represented by R. G. Flato, as agent and trustee, asked to be made plaintiffs in the suit and adopted the pleadings of R. G. Flato. The case involved the vitality of a lease given by appellants to Hirsch and others for a period of five years, for the sole purpose of drilling for oil, gas, and other minerals. It was tried by the court, without a jury and resulted in a judgment in favor of appellees, who were granted six months from the time when the judgment became final in which to resume active operations on the land.

The facts show, that on February 28, 1922, an escrow agreement was made by and between the parties, by which a lease to the land was placed with bankers in Kingsville to be delivered to the Frances Oil Trustees if they started drilling operations in thirty days, and if oil or gas was obtained in paying quantities, and further that they paid to lessors the sum of $16,000 in cash, then the lease would be in full force and effect. The lease was for five years from February 28, 1922, and from year to year thereafter so long as the premises should yield gas, oil, sulphur, or other minerals in paying quantities.

On March 5, 1923, an agreement was made

between the parties, in writing, that the lessees had brought in a well that was producing gas in paying quantities, as contemplated in the original escrow agreement and lease. The lessees paid to the lessors $6,000 in cash, and executed promissory notes for $10,000, which were accepted by the lessors and the lease was delivered to the Frances Oil Trustees and was duly recorded. The well produced gas in paying quantities for about four months, when water interfered with its operation and it was disconnected from the Kleberg County Oil and Gas Company which was taking the gas. After the well was disconnected, it was capped and precaution taken to protect it. Afterward sand entered the well and caused the gas to cease to flow.

The lease was assigned by the Frances Oil Trustees to the appellees herein, who sought to negotiate for the development of the premises or to sell the lease, but put forth no effort to rehabilitate the well until on or about, December 22, 1926, when an arrangement was made with the Kleberg Oil and Gas Company, to purchase all gas produced on the premises. This was the first time appellees had been able to procure a contract for the sale of sufficient gas to justify reconditioning the well. Appellees began at once to put the well in condition. Appellants knew of the attempt to rehabilitate the well, and on or about February 20, 1927, before the expiration of the five years' lease, the well was brought in as a gas producer and the machinery of those working on the well was removed. The well was producing gas in paying quantities prior to February 28, 1927, and continued to do so until about March 5, or 6, 1927.

No notice was given appellees until March 7, that the lease was terminated, and after that appellants prevented appellees from operating on the premises, although they offered to rehabilitate the well again. The finding of the court as to appellees acting in good faith is not challenged by appellants, and this court indorses the finding. This court agrees substantially with all the findings of fact of the trial judge, and particularly finds that the lease was not abandoned by appellees. They were compelled by appellants to cease operations.

The first proposition, based on the first assignment of error is that the obligation rested on the lessees to use reasonable diligence to explore for oil, gas, or other minerals, as that was the real consideration for the lease, and such obligation had not been met by drilling, in five years, only one well and when it failed to produce, made no effort to further explore for a period of two and a half years. The lease was dated on February 28, 1922, and shortly thereafter, appellees began operations on the land and brought in a well producing gas in paying quantities and it was accepted by the appellants as such, on March 5, 1923. That acceptance was evidenced by

a written agreement dated, March 5, 1923. After the well was dug and gas was brought in, no further efforts were put forth by appellees until December, 1926, when efforts were made to bring in the well again, which had filled with sand and was not producing, at least from June, 1924.

[1, 2] We are of opinion, that the court properly found that the agreement of March 5, 1923, put the lease into full force and effect for five years from and after, February 28, 1922, and that if a forfeiture of the lease took place, it must have been on account of matters occurring between March 5, 1923, and February 28, 1927. A provision of the lease contract is that the lease shall continue for five years and year after year thereafter, so long as the premises shall yield gas, oil, sulphur, or other minerals in paying quantities, not, to exceed fifty years.

The continuation of the lease for five years did not depend, upon the number of wells dug by appellees, but upon whether one or more of the minerals was being produced in paying quantities. The production of gas or oil for a short time during the first five years in paying quantities, would not meet the terms of the contract and continue the lease longer than the five-year period. Even though efforts had been made to bring in other wells, or to recondition the well that had been dug, under the terms of the contract the lease expired at the end of five years, unless the premises were yielding gas, oil, sulphur, or other minerals. The well was producing at the end of the five years. Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309; Texas Co. v. Davis, 113 Tex. 335, 254 S. W. 304, 255 S. W. 601.

There is no express agreement as to forfeiture in the contract, the only provision that hints at such a result is the fourth clause, in which it is provided that if lessees should discover oil in paying form, that within the limit of the lease they should "reasonably exploit such discovery in good faith to the end, that all such wells as may be necessary to fully develop and get the maximum value from each such discovery shall be drilled and operated with reasonable diligence." The only circumstances under which a forfeiture is provided, is where it is stipulated in the fourteenth clause:

"It is agreed and understood in the event that lessees shall fail to comply with any of the terms of this lease after thirty (30) days' written notice has been served on lessees by lessors, notifying lessees, of such failure, this lease shall terminate as to both parties and be of no further force and effect."

No notice was given to lessees of any discontentment with the actions of appellees, or that a forfeiture would be claimed.

[3, 4] If, at the termination of the five years provided for in the lease, gas, oil, sulphur, or other mineral was not being produced in paying quantities, the contract was

at an end, without notice and without declaration of forfeiture. It automatically ceased to exist. But there is evidence that shows, that at the end of the five-year period the gas was flowing in paying quantities and under the terms of the contract. that was sufficient to perpetuate .the vitality of the contract. After the well again became out of order, the notice of forfeiture was given over the protests of appellees that they be permitted to again recondition the well. The gas was there ready to flow, with proper work on the well, and appellees should have been permitted to perform that work. It would not matter that. appellees had begun operations in December, 1926, in order to preserve the vitality of the lease, they succeeded in starting afresh the flow of gas before the end of the five-year term and thereby preserved to themselves rights acquired under the contract.

[5] The second proposition is, that merely capping a gas well is not sufficient precaution to preserve it. The fact remains that the well was so protected that it took only a few days to bring it back to its original state. The proposition is overruled.

[6] The court was authorized to find that appellees "made some effort to negotiate for development of the premises." They made at least two contracts to sell the gas. During all the five years, appellants entered no objection to the manner in which the well was being handled, and near the end of the five-year term conversed with appellees as to the feasibility of reopening the well, without making any complaint as to the manner in which the well had been handled. Their conduct was such, as to lead appellees to believe that all would be agreeable if the well was reconditioned. Thornton, Law of Oil & Gas, §§ 208–209. The third proposition is overruled.

[7, 8] Appellants had by their silence, permitted appellees to expend money in bringing in the well about the end of the five years, and made no effort to claim an abandonment of the lease for at least a week on the sixth year from the date of the contract. The acts of appellees did not show an intent to abandon the lease as a matter of .law. The question was one of fact to be determined by the court in view of the circumstances surrounding the case.

. "The law is well settled that a temporary cessation of developments or operation under an oil and gas lease does not, as a matter of law, constitute an abandonment." Wisconsin-Texas Oil Co. v. Clutter (Tex. Com. App.) 268 S. W. 921.

Appellants evidently did not consider that appellees had abandoned the lease at the end of the five-year term, and only took action after the beginning of another lease year. By their acts they caused heavy expense to appellees and.should not be allowed to declare an abandonment of the contract. The fourth and fifth propositions are overruled.

' [9] There is evidence to sustain the finding, that appellees are ready, able, and willing to continue operations under the contract, but we see no ground for attempting to give appellees six months within which to resume operations after the entry of final judgment. Appellees were compelled by the acts of appellants to cease operations, and the time consumed by appellants in endeavoring to compel an abandonment of the lease, should not be deducted from the year added to the length of the lease by a rehabilitation of the well, and appellees should be placed in the same position they occupied under the contract when they were compelled to cease operations by appellants on March 7, 1927. Appellees would be entitled to use the time remaining of the added year, to begin and prosecute the work of seeking for minerals under the terms of the contract. The court had no authority to fix a time that should be accorded appellees in which to begin operations, and that portion of the judgment of the trial court will be eliminated. Appellees,. in case the final judgment should be in their favor, should proceed under the terms of the contract as though operations thereunder had not been interrupted by appellants.

The remaining propositions are overruled and, with the provision as to the six months' time sought to be given appellees, eliminated and stricken out, the judgment will be affirmed.