HALF MOON FRUIT AND PRODUCE COMPANY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Half Moon Fruit & Produce Co. v. Commissioner
Docket Nos. 9843-77, 9844-77, 9845-77, 9846-77, 9847-77.
United States Tax Court
T.C. Memo 1980-108; 1980 Tax Ct. Memo LEXIS 477; 40 T.C.M. (CCH) 96; T.C.M. (RIA) 80108; April 8, 1980, Filed *477 P and C, farming businesses, owned rice acreage allotments throughout 1974. For many years before 1974, farmers were required to own allotments in order to market their rice and to receive price supports. However, because the supply of rice was less in 1974, farmers were permitted to market rice without owning allotments, but allotments were still required in order to receive price supports in 1974. Held, the rice allotments owned by P and C were not worthless in 1974, and hence, they are not entitled to a deduction for the loss in value of such allotments. Stephen J. Schwartz and Charles A. Lane, for the petitioners. Rebecca T. Hill, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in the petitioners' Federal income taxes: Taxable Year
Petitioner
Ending
Deficiency
Hal Moon Fruit and
Produce Company
2/28/75
$26,613.00
John B. Giovannetti
12/31/74
5,350.00
Ronald P. Giovannetti
and Norma J.
Giovannetti
12/31/74
5,097.00
Blaise E. Giovannetti
and Mary E.
Giovannetti
12/31/74
5,933.00
Donald P. Giovannetti
and Adele M.
Giovannetti
12/31/74
4,697.00
The only issue for decision *479 is whether certain rice acreage allotments became worthless during 1974 so as to result in a loss deductible under section 165(a) of the Internal Revenue Code of 1954. [2]
FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Donald P. Giovannetti and Adele M. Giovannetti (husband and wife), Blaise E. Giovannetti and Mary E. Giovannetti (husband and wife), and John B. Giovannetti, all maintained their legal residences in Woodland, Calif., when they filed their petitions in this case. The petitioners, Ronald P. Giovannetti and Norma J. Giovannetti, husband and wife, maintained their legal residence in Yuba City, Calif., when they filed their petition. The petitioner, Half Moon Fruit and Produce Company (Half Moon), is a California corporation with its principal place of business in Woodland, Calif., when it filed its petition. Mr. and Mrs. Donald Giovannetti, Mr. and Mrs. Blaise Giovannetti, and Mr. and Mrs. Ronald Giovannetti filed joint Federal income tax returns *480 for 1974 with the Internal Revenue Service Center, Fresno, Calif. John B. Giovannetti filed his individual Federal income tax return for 1974, and Half Moon filed its corporate Federal income tax return for the taxable year ending February 28, 1975, with the Internal Revenue Service Center, Fresno, Calif. practice, once a farmer obtained an allotment, he continued to receive it each year. A farmer's acreage allotment served him in two ways: Whenever the "total supply" of rice was expected to exceed the "normal supply" in a crop year, the Secretary of Agriculture was required to declare marketing quotas in effect. 7 U.S.C. sec. 1354 (1974). A farmer's marketing quota was, in general, the amount of rice he was able to produce on his acreage allotment. 7 U.S.C. sec. 1355 (1974). If a farmer produced rice in excess of his quota, a heavy penalty was assessed against the buyer of the excess so that, in effect, the excess was unmarketable. 7 U.S.C. sec. 1356 (1974). Thus, in years when quotas were in effect, a farmer needed an acreage allotment in order to market his rice. In addition, a farmer's acreage allotment served *481 to qualify him for price supports, and such benefit was available even when marketing quotas were not in effect. See Agricultural Act of 1949, ch. 792, 63 Stat. 1054, 7 U.S.C. sec. 1421(c); 7 C.F.R. sec. 1421.303 (1974). Acreage allotments for rice production were commonly traded and leased for substantial consideration. When an allotment was traded, the transferee acquired the right to use the allotment for the crop year and the right to receive future allotments based thereon. In 1969, Half Moon began purchasing acreage allotments for rice production, and by 1973, it had purchased allotments covering 169.5 acres for an aggregate price of $55,725. In 1971 and 1972, the partnership also purchased allotments covering 148.1 acres for an aggregate price of $57,818. From 1938 to 1954, marketing quotas for rice were in effect for some but not all years, but from 1954 through 1973, such quotas were in effect for each year. However, in October 1973, the Secretary of Agriculture announced that he expected the total supply of rice for the year to be less than the normal supply and that accordingly marketing quotas for rice would not *482 be in effect for 1974. 7 C.F.R. sec. 730.1501 (1974); see 7 U.S.C. sec. 1354 (1974). In late 1974, the Secretary of Agriculture also announced that the total supply of rice for the current year was expected to be less than the normal supply and that therefore marketing quotas for rice would not be in effect for 1975. 7 C.F.R. sec. 730.1501 (1975). The announcements for 1974 and 1975 pointed out that since marketing quotas for rice were not in effect for those years, there was no penalty on the marketing of excess rice but that to qualify for price supports for production of rice, a farmer was restricted to planting the acres allocated to him. In neither announcement did the Secretary give any indication that the enforcement of marketing quotas for rice had ended permanently; in fact, under the law then in effect, he was bound to enforce such quotas whenever the total supply of rice was greater than the normal supply. In 1976 and 1977, the Congress suspended marketing quotas for rice for crop years 1976 through 1981 and established, in lieu thereof, a "target price" system. Rice Production Act of 1975, Pub. L. 94-214, secs. 102-103, 90 Stat. 183; Food and *483 Agriculture Act of 1977, Pub. L. 95-113, secs. 702-703, 91 Stat. 940. During 1974 and 1975, rice acreage allotments continued to be traded for substantial consideration. In those years, the partnership and Half Moon did not acquire any additional rice allotments, but they did follow all procedures necessary to avoid losing their rice allotments. Thus, they used such allotments by planting rice on the acres covered by them, and they filed numerous forms with the local office of the Agricultural Stabilization and Conservation Service (ASCS). On their 1974 returns, the partnership and Half Moon reported their rice allotments as a total loss in 1974 and deducted from gross income the entire amounts paid for them. On their returns, the individual petitioners reported their distributive shares of the partnership income taking into consideration the loss claimed for the rice allotments. In his notices of deficiency, the Commissioner disallowed the deductions taken by Half Moon and the partnership, and he increased the distributive shares of the individual petitioners to reflect the disallowance of the deduction claimed by the partnership. OPINION This case, in the words of Justice *484 Frankfurter, "is a horse soon curried." [4] The petitioners contend that the decisions by the Secretary of Agriculture in 1973 and 1974 not to enforce marketing quotas for rice in 1974 and 1975 rendered their acreage allotments worthless in 1974. They conclude that they were entitled to deductions under section 165(a) for the losses they incurred. On the other hand, the Commissioner contends that there were no closed and completed transactions evidencing any losses and that, in any event, the allotments were not worthless.
It is axiomatic that to be deductible under section 165(a), a loss must be evidenced by a closed and completed transaction. Sec. 1.165-1(b), Income Tax Regs.; Beatty v. Commissioner,46 T.C. 835 (1966); A. J. Schwarzler Co. v. Commissioner,3 B.T.A. 535 (1926). Here, the partnership and Half Moon did not sell or otherwise transfer their allotments in 1974, thus establishing that they sustained a loss in such year. Nor did they abandon the allotments in such year; in fact, they actively maintained the allotments by fulfilling the requirements *485 of ASCS. We recognize that if the act of removing marketing quotas rendered the rice allotments totally worthless, such act might be sufficient to establish that a loss had been sustained. See McAvoy Co. v. Commissioner,10 B.T.A. 1017 (1928); Zakon v. Commissioner,7 B.T.A. 687 (1927) (both cases allowed a deduction for the total loss in value of liquor licenses resulting from the enactment of Prohibition). However, the record contains persuasive evidence that the rice allotments were valuable assets even while marketing quotas were not in effect. At trial, the Commissioner firmly established, with reliable testimony, that rice allotments were traded and leased for substantial consideration in 1974 and 1975. It is easy to understand why there continued to be a market for rice allotments in such years. Even though allotments were not a prerequisite to marketing rice in those years, they did serve to qualify their owners for price supports. Moreover, the decisions not to enforce marketing quotas in 1974 and 1975 were clearly temporary. Enforcement had been suspended before--in 1954, and there was no reason to believe it would not resume after *486 1974 as it had resumed after 1954. Indeed, the Agricultural Adjustment Act of 1938, as in effect in those years, required the Secretary of Agriculture to re-establish marketing quotas whenever the total supply of rice exceeded the normal supply. 7 U.S.C. sec. 1354 (1974). The conclusion is inescapable that the rice allotments of the partnership and Half Moon were not worthless in 1974. It may be true that in 1974, there was some decline in the value of the allotments, but it is well settled that mere diminution in value does not result in a deductible loss. Hudspeth v. United States,519 F. 2d 1055 (5th Cir. 1975); Beatty v. Commissioner,supra at 838; Pugh v. Commissioner,17 B.T.A. 429, 434 (1929), affd. 49 F. 2d 76 (5th Cir. 1931), cert. denied 284 U.S. 642 (1931). Accordingly, we hold that the petitioners are not entitled to a deduction in 1974 on account of the rice allotments. In view of that conclusion, we do not reach the Commissioner's alternative contention that the deductions were claimed in the wrong year. Decisions will be entered for the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: John B. Giovannetti, docket No. 9844-77; Ronald P. Giovannetti and Norma J. Giovannetti, docket No. 9845-77; Blaise E. Giovannetti and Mary E. Giovannetti, docket No. 9846-77; and Donald P. Giovannetti and Adele M. Giovannetti, docket No. 9847-77.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue unless otherwise indicated.↩
4. Olberding v. Illinois Central R. Co.,346 U.S. 338, 340↩ (1953).